**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| PAPST LICENSING GMBH & CO. KG, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 6:18-cv-388-RWS |
| v. § | |
| § | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD, § | |
| et al., § | |
| § | |
| Defendants. | |

**FINAL JURY INSTRUCTIONS**

**1.      Introduction**

MEMBERS OF THE JURY:

You have now heard the evidence in this case, and I will instruct you now on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the sole judges of the facts. Do not consider any statement that I may have made during the trial or make in these instructions as an indication that I have any opinion about the facts of the case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and what the parties' contentions are.

## 2.    General Instructions

### 2.1    Verdict Form

A verdict form has been prepared for you. You will take this form with you to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date it and sign the form. Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

### 2.2    Considering Witness Testimony

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced or introduced them. You the jurors are the sole judges of the credibility of all the witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that some

other time the witness said or did something or failed to say or do something that was different from the testimony the witness gave before you during trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory. And the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

### 2.3    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Before this trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. You should judge the credibility of and weigh the importance of deposition

testimony to the best of your ability just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

The parties have stipulated, or agreed, to some facts in this case.  When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

### 2.4    Direct and Circumstantial Evidence

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet

umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  As a general rule, the law makes no distinction between the weights that you should give to direct and circumstantial evidence, nor does it say that one is any better evidence than the other, but simply requires that you find the facts from all the evidence, both direct and circumstantial, and give it the weight you believe it deserves.

### 2.5    Objections to Evidence

Attorneys representing clients in courts such as this one have an obligation to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence. So, you should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, then ignore the question.  If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

During the trial, I may not have let you hear the answers to some of the questions the lawyers asked. I also may have ruled that you could not see some of the exhibits the lawyers wanted you to see. And sometimes I may have ordered you

to disregard things that you saw or heard. You must completely ignore all of these things as I have instructed. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place outside of your presence.

### 2.6    Demonstrative Exhibits

Certain exhibits shown to you are illustrations of the evidence, but are not themselves evidence. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

### 2.7    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, he or she is called an expert witness, and is permitted to state his or her opinion on technical matters. However, you are not required to accept that opinion. As with any other

witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it.

### 3.      Contentions of the Parties

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Plaintiff, Papst Licensing GmbH & Co., KG ("Papst" or "Plaintiff"), seeks money damages from Defendants Samsung Electronics Co, Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") for allegedly infringing certain claims of U.S. Patent No. 6,895,449 (referred to as the "'449 Patent"). Plaintiffs contend that certain Samsung smart phones, feature phones, and tablets infringe claims 1 and 17 of the '449 Patent. The '449 Patent is also referred to as the "patent-in-suit" and claims 1 and 17 are referred to as the "asserted claims."

Papst contends that Samsung directly infringed the asserted claims of the '449 Patent by making, using, selling, offering for sale, or importing certain smart phones, feature phones, and tablets in the United States. Papst further contends that Samsung has induced infringement of the asserted claims of the patent-in-suit by others, such as its customers, and contributed to the infringement of the asserted claims of the patent-in-suit by its customers.

Samsung denies that it has infringed the asserted claims of the patent-in-suit either directly or by induced or contributory infringement. Samsung further denies that the Plaintiff is entitled to any damages. Samsung also contends the asserted claims are invalid because they are anticipated or rendered obvious by the prior art. Samsung contends that at the time of the alleged invention, prior art existed that disclosed every element of the asserted claims and made them obvious to a person of ordinary skill in the art.

Your job is to decide whether Samsung has infringed the asserted claims of the patent-in-suit, and whether the asserted claims of the patent-in-suit are invalid. Infringement and invalidity are separate and distinct questions and should be considered and answered separately. If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide the amount of money damages to be awarded to Papst to compensate it for the infringement, if any.

## 4.    Burdens of Proof

Facts must be proved by a required standard of evidence known as the burden of proof.

You've heard about it, I'm sure, from television in criminal cases. There's a reference to proof beyond a reasonable doubt. That does not apply in a civil case like this. In a patent case like this one there are two other burdens of proof that will apply:

(1) the preponderance of the evidence standard; and (2) the clear and convincing evidence standard.

The Plaintiff, Papst, must prove its claims of patent infringement and damages by a preponderance of the evidence.

When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.

If you put the evidence for and against the party who must prove the fact on opposite sides of the scale, the preponderance of the evidence requires that the scale tip somewhat toward the party who has the burden of proof.

Samsung has the burden of proving invalidity by clear and convincing evidence. That means evidence that produces in your mind a firm conviction or belief as to the matter at issue.

Although proof to a certainty is not required, the clear and convincing standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

If the proof establishes in your mind in a firm belief or conviction, then the clear and convincing evidence standard has been met.

### 4.1    No Inference from Filing Suit

The fact that the plaintiff brought a lawsuit in this Court seeking damages creates no inference that the plaintiff is entitled to a judgment. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## 5. Patent Claims

### 5.1 Role of Patent Claims

Before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims."

Patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends upon what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it's my role to define the terms of the claims, and

it's your role to apply these definitions to the issues that you are asked to decide in this case.

Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms at issue in this case and I have provided you those definitions in Appendix A. You must accept the definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including infringement and validity. The claim language I have not interpreted for you is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

### 5.2    What a Claim Covers

I will now explain how a patent claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or system satisfies each of these requirements, then it is covered by the claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a thing, such as a device, product, or system, meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a feature, product, or system where each of the claim elements or limitations is present in that device, product, or system—a claim covers such a product or system even if the product or system has additional features or components that are not covered by the claim. Conversely, if the device, product, or system meets only some, but not all, of the claim elements or limitations, then that device, product, or system is not covered by the claim.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

### 5.3    Claim Interpretation

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims.

As you may recall, certain claim terms have already been interpreted or defined by the Court. These definitions are also called claim constructions. The

Court's definitions are set forth in the claim construction chart provided in your notebooks.

As I have previously instructed you, you must accept my definition of these words in the claims as correct. You must disregard any argument or evidence presented by either party suggesting that the terms in the claim construction chart mean anything other than the definitions provided in the chart.

For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity. These issues are yours to decide.

You will also find another copy of my definitions as Appendix A to this charge. I will now turn to Appendix A and read the claim terms and the Court's constructions. You can follow along from your juror notebook if you would like.

### 5.4   Independent Claims

This case involves one type of patent claim: an independent claim. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, both claim 1 and claim 17

of the '449 Patent are independent claims.  It is possible to infringe or not infringe either claim 1 or claim 17, without the same being true of the other claim.

### 5.5    Open-Ended or "Comprising" Claims

The beginning portion, or preamble, of the claims uses the word "comprising." "Comprising" and "comprises" mean "including or containing but not limited to." Thus, if you decide that an accused product includes all the requirements in that claim, the claim is infringed.

### 6.    Infringement

I will now instruct you how to decide whether or not Samsung has infringed the patent-in-suit. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Papst must also prove that Samsung's indirect infringement caused direct infringement.

In this case, Papst has alleged that Samsung has directly infringed the patent-in-suit. In addition, Papst has alleged that Samsung's customers or end-users directly

infringe the patent-in-suit, and that Samsung is liable for actively inducing or contributing to that direct infringement by its customers or end-users.

In order to prove infringement, Papst must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

### 6.1    Direct Infringement

If a person makes, uses, offers to sell, or sells in the United States something that is covered by the claims of a patent without the patent owner's permission, that person is said to directly infringe the patent. To determine direct infringement, you must compare the accused product with each and every one of the requirements of the asserted claims to determine whether all of the requirements of that claim are met.

A patent claim is infringed only if an accused product includes each and every element in that patent claim.  If the accused product does not contain one or more of the elements recited in the claim, then that product does not infringe the claim.

If you find that the accused product or system includes each element of the claim, then that product or system infringes the claim, even if such product or system contains additional features or components that are not recited in the claims.

A person may literally infringe a patent, even though in good faith the person believes that what it is doing is not an infringement of any patent, and even if it did not know of the patent. Literal infringement does not require proof that the person copied a product or the patent.

In deciding whether a sale has taken place "in the United States," you may find the following guidelines helpful to your analysis:

The location of the sale depends on many factors, and you may find that the sale occurred in several places.  A sale occurs wherever the "substantial activities of the sales transaction" take place.  The "substantial activities of the sales transaction" may include, for example, performing obligations under the contract.

You must consider each of the asserted claims individually. You must be certain to compare each accused product or system with each claim that such product or system is alleged to infringe. Each accused product or system should be compared to the limitations recited in the asserted claims, not to any preferred or commercial embodiment of the claimed invention. If you find that Papst has proved by a preponderance of the evidence that each and every limitation of that claim is present in an accused product or system, then you must find that such product or system infringes that claim.

**6.2    Direct Infringement–Infringement of an Apparatus Claim**

Claims 1 and 17 are what we refer to as "system" or "apparatus" claims, meaning they are directed to a product, device, system, or apparatus rather than directed to a process or series of acts or steps.  To infringe an apparatus claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode, even though it may also be capable of a non-infringing mode(s) of operation.

### 6.3    Indirect Infringement – Active Inducement

Papst alleges that Samsung is liable for infringement by actively inducing its customers to directly infringe the patent in suit. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Samsung is liable for active inducement of a claim only if Papst proves by a preponderance of the evidence that:

1.    the acts are actually carried out by another, such as Samsung's customers, and that the other directly infringes that claim;

2.    Samsung took action during the time the patent was in force intending to cause the infringing acts by another; and

3.    Samsung was aware of the patent-in-suit and knew that the acts, if taken, would constitute infringement of that patent.

Although Papst need not prove that Samsung has directly infringed to prove indirect infringement, Papst must prove that someone directly infringed.  If there is

no direct infringement by anyone, Samsung cannot have actively induced infringement of the patent.

If you find that Samsung was aware of the patent-in-suit, but believed that the acts it encouraged did not infringe that patent, Samsung cannot be liable for inducement. In order to establish inducement of infringement, it is not sufficient that another directly infringes the claims. Nor is it sufficient that Samsung was aware of the act(s) by another that allegedly constitute the direct infringement. Rather, in order to find inducement of infringement, you must find that Samsung specifically intended another to infringe the patent-in-suit. The mere fact, if true, that Samsung knew or should have known that there was a substantial risk that another's acts would infringe the patent-in-suit would not be sufficient for active inducement of infringement.

### 6.4    Indirect Infringement – Contributory Infringement

Papst argues that Samsung is liable for contributory infringement by contributing to the direct infringement of the patent-in-suit by its customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Samsung is liable for contributory infringement of a claim if Papst proves by a preponderance of the evidence:

1.      Samsung sells, offers to sell, or imports within the United States a component or group of components of a product, during the time the patent is in force;

2.      the component or group of components of a product has no substantial, non-infringing use;

3.      the component or group of components of a product constitutes a material part of the invention;

4.      Samsung (a) is aware of the patent and knows that the products for which the component or group of components of a product has no other substantial use is covered by a claim of the patent; or else (b) is willfully blind to the infringement of the patent.  Willful blindness requires that Samsung subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and Samsung took deliberate actions to avoid learning of the infringement; and

5.      that use directly infringes the claim.

In order to prove contributory infringement, Papst must prove that each of the above requirements is met.

Alleged non-infringing uses that are unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental are not substantial.

**7.    Invalidity**

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that the claims of the patent-in-suit are invalid.  Patent invalidity is a defense to patent infringement.  For a patent to be valid, the invention claimed must be new, useful, and not obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.

That which precedes the priority date of the patent invalidates, and that which comes after infringes.  Claims are given the same meaning for purposes of both validity and infringement.

Samsung must prove that a patent claim is invalid by clear and convincing evidence.  However, you may consider the fact of whether any of the evidence of invalidity is new, meaning that it was not considered by the Patent Office.  If evidence of invalidity is new, then you may find it is easier for Samsung to convince you that the evidence is clear and convincing proof of invalidity.

An issued patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing a patent. Each claim of a patent is presumed valid independently of the validity of the other claims.

The presumption of validity remains intact. In other words, the burden never shifts to Papst to prove that its patent is valid.

Even though the Patent Office has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

The presumption of validity is not an additional hurdle to be cleared for finding invalidity.  By applying the clear and convincing standard, you are already accounting for the presumption of validity.

### 7.1    Prior Art

That which came before a patent is generally referred to as the "prior art." Prior art may include items that were publicly known such as patents and printed publications as well as products that have been used or offered for sale in this country that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented before the priority date of the patent.

### 7.2    Priority Date and Effective U.S. Filing Date

 The parties agree that the priority date for the patent-in-suit is March 4, 1997, and the effective U.S. filing date of the application of the patent is March 3, 1998.

### 7.3    Anticipation

In order for someone to be entitled to a patent, the invention must actually be "new."  In general, inventions are new when the claimed invention has not been used in this country, or the claimed invention was already patented or described in a printed publication anywhere in the world before the priority date of the patent.

Samsung contends that claims 1 and 17 of the '449 patent are invalid because the claimed invention is not new, in other words, it is "anticipated."

For a claim to be invalid because it is anticipated, Samsung must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known, used, or described in a single prior art reference or system. To anticipate the invention, the prior art reference or system must disclose all of the requirements of the claim, either expressly or implicitly to a person having ordinary skill in the art in the technology of the invention, so that looking at that one prior art reference or system, the person could make and use the claimed invention. Anticipation must be determined on a claim-by-claim basis.

Here is a list of ways that Samsung can show that a patent claim is anticipated:

(1)    if the claimed invention was known to or used by others in the United States before the priority date.

(2)    if the claimed invention was already patented or described in a printed publication, anywhere in the world before the priority date.

(3)    if the claimed invention was already patented or described in a printed publication, anywhere in the world by anyone else, more than a year before the effective U.S. filing date of the application for the patent. An invention was patented

by another if the other patent describes the same invention claimed by Papst to a person having ordinary skill in the technology.

(4)    if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective U.S. filing date of the application for the patent.  An invention was publicly used when it was either accessible to the public or commercially exploited.

To understand how the prior art system operates, you may rely on multiple pieces of evidence that describe a same prior art system for the purpose of finding anticipation.  In other words, if you find that a single prior art system existed that meets every element of the claim, then that is enough to find the claim invalid as anticipated.

### 7.4    Obviousness

Samsung also contends that the asserted claims are invalid as obvious. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the relevant field of technology of the patent at the time the invention was made.

Samsung may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of the invention at the time the invention

was made. In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

### 7.4.1 Level of Ordinary Skill

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

### 7.4.2 Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill would have considered when trying to solve the problem that is addressed by the invention.

### 7.4.3 Differences between the Prior Art and the Claimed Invention

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the claimed invention.

### 7.4.4  Motivation to Combine

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that as of the priority date of the patent-in-suit, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

1.   Whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2.   Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.   Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.   Whether the prior art teaches away from combining elements in the claimed invention;

Page **25** of **37**

5.    Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

6.    Whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success to one of ordinary skill in the art.

However, it is improper to combine references where the references teach away from their combination. A reference teaches away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken in the claim. A reference that merely expresses a general preference for an alternative invention but does not criticize, discredit, or otherwise discourage investigation into the claimed invention does not teach away.

If the prior art teaches away from a combination for these reasons, you may find but are not required to find that it does not make the claimed invention obvious. In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., you are to consider only what was known at the time of the invention.

## 8.    Damages

If you find that Samsung has infringed any valid claim of the patent-in-suit, you must then consider what amount of damages to award to Papst. If you find that Samsung has not infringed any valid claim of the patent, then Papst is not entitled to any damages.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. Any damages you award must be adequate to compensate Papst for any infringement you find. Damages are not meant to punish an infringer or to set an example. Any damages award, if you reach this issue, should put Papst in approximately the same financial position that it would have been in had the infringement not occurred.

Papst has the burden to establish the amount of its damages by a preponderance of the evidence. Plaintiff is not required to prove its damages with mathematical precision, but must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

 In this case Papst seeks damages in the form of a reasonable royalty. A reasonable royalty is defined as the money amount Papst and Samsung would have agreed upon as a fee for Samsung's use of the invention at the time Samsung sold its first accused product. The damages should be no more or no less than the value

of the patented invention.

The patent law does not allow you to use the value of an entire product or service, or the value of the entire market, to determine damages unless you find that Papst's has proven by a preponderance of the evidence that the patented feature of the product drives consumer demand for the entire product or service.

## 8.1    Reasonable Royalty

If you find that Papst has established infringement of a valid claim, Papst is entitled to at least a reasonable royalty to compensate them for that infringement.

### 8.1.1  Hypothetical Negotiation

A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make, use or sell the invention. It is the royalty that would have resulted from an arm's length negotiation between a willing licensor and a willing licensee—here, Papst (as the licensor) and Samsung (as the licensee) at the time Samsung sold its first accused product. This is known as the "hypothetical negotiation." Unlike in a real-world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is both infringed and valid. In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

The date of the hypothetical negotiation between Papst and Samsung is the earliest date that Samsung sold in the United States one of the products that Papst accuses in this lawsuit of infringing the patent-in-suit.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when Samsung first infringed the patent-in-suit and the facts that existed at that time. However, evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Your determination does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties on the date of the hypothetical negotiation.

### 8.1.2  Georgia-Pacific Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner (Papst) and the alleged infringer (Samsung) would consider in setting the amount the alleged

infringer should pay. I will list for you a number of factors you may consider. They are as follows:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patent, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or
significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

The value that the patent owner gave to purchase the patent may be relevant to the determination of a reasonable royalty.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. In determining a reasonable royalty, you may also consider whether or not a commercially acceptable non-infringing alternative was available to Samsung at the

time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

### 8.2    License Comparability

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question or for rights to similar technologies. A license agreement need not be perfectly comparable to the hypothetical license that would have been negotiated between Papst and Samsung in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Papst and Samsung when you make your reasonable royalty determination, including the type of technology licensed, whether the license contained a cross-license and/or similar patent protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use, if any, of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license and whether contrary to the hypothetical negotiation the licensee in the real world license, at the time of entering the license, believed that the patents were either not infringed or were invalid.

### 8.3 Use of Settlement and License Agreements

Licenses and settlement agreements must not be considered when determining issues of infringement or invalidity. However, licenses and settlement agreements may be considered in determining damages.  Thus, the fact that other companies have taken licenses from Papst, or have settled litigation with Papst, is not relevant to any issue other than damages in this case.

### 8.4 Use of Non-Infringing Alternatives

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

### 8.5 Apportionment for Royalty

Damages for patent infringement must be apportioned to reflect the value the invention contributes to the accused products or features and must not include value from the accused products or features that is not attributable to the patent.

### 8.6 Consider All Evidence

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your

consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

### 8.7    Lump Sum versus Running Royalty

A royalty may be calculated as a one-time lump sum payment or a running royalty.  A one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covers all sales of the licensed product, both past and future.  This differs from payment of a running royalty because, with a running royalty, the licensee pays based on the actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.  It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case for the life of the patent.

### 8.8    When Damages Begin

In determining the amount of damages, you should not award damages for any infringement occurring prior to six years before the lawsuit was brought, November 30, 2009.

### 9.    Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the

evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges of the facts. Your only interest is to seek the truth from the evidence in the case. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. Corporations and businesses are entitled to the same fair trial as a private individual. All persons, including corporations, both foreign and domestic, stand equal before the law, regardless of size or who owns them or where they are located, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as the exhibits which the Court has admitted into evidence. You will select your foreperson and conduct your deliberations. If you

recess during your deliberations, please follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you may have taken during the trial, are only aids to your memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. Your notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or a question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

And then finally, after you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.