**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PAPST LICENSING GMBH & CO. KG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:18-cv-0388-RWS |
| v. | § | |
| | § | LEAD CASE |
| SAMSUNG ELECTRONICS CO., LTD., et al. | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSIVE SUPPLEMENTAL BRIEF**
**CONCERNING COLLATERAL ESTOPPEL[1]**

---

[1] All emphasis in quotations herein added unless otherwise noted herein.

# TABLE OF CONTENTS

I.      The PTAB's Lower Burden of Proof Makes Collateral Estoppel Inapplicable. .................1

II.     The '746/'144 PTAB Decisions Do Not Collaterally Estop Papst's Arguments. ...............2

        A.      The Federal Circuit Previously Rejected Similar Arguments by Samsung. ...........3

        B.      Collateral Estoppel Does Not Bar Papst's Arguments that the Kawaguchi
                Combination Fails to Disclose Two Limitations of the '449 Patent. ......................4

                1.      Samsung Failed to Show that the Kawaguchi Device Presents an
                        Emulated File System that "Does Not Actually Exist on the Interface
                        Device." ...................................................................................................4

                2.      Samsung Failed to Show That the Kawaguchi Device Sends a Signal
                        Identifying Itself as a Customary Storage Device. ....................................6

        C.      Collateral Estoppel Does Not Bar Papst's Arguments That the Asserted
                References Show No Motivation to Combine Exists. ............................................8

                1.      Kawaguchi and Schmidt Teach Away from Their Combination. ...............8

                2.      Kawaguchi and Schmidt Show Their Combination Would Violate
                        Principles of the Art and Render It Inoperable. ........................................10

                3.      Kawaguchi and Murata Show Their Combination Violate Principles of
                        the Art and Render It Inoperable. .............................................................10

# TABLE OF AUTHORITIES

**Cases**

*A.B. Dick v. Burroughs,*
 713 F.2d 700 (Fed. Cir. 1983) ......................................................................... 3

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
 694 F.3d 1312 (Fed. Cir. 2012) ....................................................................... 8

*Applied Mat'ls v. Gemini Research,*
 835 F.2d 279 (Fed. Cir. 1987) ......................................................................... 3

*Blonder-Tongue Labs. v. Univ. of Ill. Found.,*
 402 U.S. 313 (1971) ......................................................................................... 2

*Bobby v. Bies,*
 556 U.S. 825 (2009) ......................................................................................... 3

*C.I.R. v. Sunnen,*
 333 U.S. 591 (1948) ......................................................................................... 3

*Cobb v. Pozzi,*
 363 F.3d 89 (2d Cir. 2004) .............................................................................. 2

*Comair Rotron v. Nippon Densan,*
 49 F.3d 1535 (Fed. Cir. 1995) ......................................................................... 3

*Copeland v. Merrill Lynch & Co.,*
 47 F.3d 1415 (5th Cir. 1995) ........................................................................... 3

*Cumberland Pharm. v. Mylan Institutional LLC, et al.,*
 846 F.3d 1213 (Fed. Cir. 2017) ....................................................................... 8

*Dias v. Elique,*
 436 F.3d 1125 (9th Cir. 2006) ......................................................................... 2

*Fellowes Inc. v. ACCO Brands Corp.,*
 2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ................................................... 2

*Finjan v. Sophos,*
 244 F. Supp.3d 1016 (N.D. Cal. 2017) ......................................................... 3, 5

*Hill-Rom Co. v. Kinetic Concepts,*
 209 F.3d 1337 (Fed. Cir. 2000) ....................................................................... 3

*In re Keaty,*
 397 F.3d 264 (5th Cir. 2005) ........................................................................... 3

*Intellectual Ventures I v. Lenovo Grp.*,
    2019 WL 1474460 (D. Mass. Apr. 4, 2019) ...................................................................2

*Midwest Mechanical Contractors v. Commonwealth Const.*,
    801 F.2d 748 (5th Cir. 1986) ...........................................................................................2

*Moch v. East Baton Rouge Parish Sch. Bd.*,
    548 F.2d 594 (5th Cir. 1977) ...........................................................................................2

*Mozingo v. Correct Mfg.*,
    752 F.2d 168 (5th Cir. 1985) ...........................................................................................2

*Nichia Corp. v. VIZIO, Inc.*,
    No. 16-cv-00545, 2018 WL 1942413 (C.D. Cal. Mar. 29, 2018) .....................................3

*O'Shea v. Amoco Oil*,
    886 F.2d 584 (3d Cir. 1989) ............................................................................................2

*Ohio Willow Wood v. Alps South, LLC*,
    735 F.3d 1333 (Fed. Cir. 2014) ......................................................................................3

*Pace v. Bogalusa City Sch. Bd.*,
    403 F.3d 272 (5th Cir. 2005) ...........................................................................................3

*Papst Licensing v. Apple*,
    767 F. App'x 1011 (Fed. Cir. 2019) ...............................................................................4

*Purdue Pharma v. Iancu*,
    No. 2018-1710, 2019 WL 1752642 (Fed. Cir. Apr. 17, 2019) .........................................3

*Soverain Software v. Victoria's Secret Direct Brand Mgmt.*,
    778 F.3d 1311 (Fed. Cir. 2015) ......................................................................................2

*State Farm Mut. Auto. Ins. Co. v. Logisticare Soln's*,
    751 F.3d 684 (5th Cir. 2014) ...........................................................................................2

*Studiengesellschaft Kohle v. Eastman Kodak*,
    616 F.2d 1315 (5th Cir. 1980) .........................................................................................3

*SunTiger, Inc. v. Sci. Res. Funding Grp*,
    189 F.3d 1327 (Fed. Cir. 1999) ......................................................................................3

*TicketNetwork, Inc. v. CEATS, Inc.*,
    IPR2018-245, Paper 50 (PTAB May 31, 2019). ...........................................................3, 5

*U.S. Ethernet Innovations, LLC v. Texas Instruments, Inc.*,
    645 F. App'x 1026 (Fed. Cir. 2016) ...............................................................................2

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) ....................................................................................3, 7

*XY, LLC v. Trans Ova Genetics, L.C.*,
  890 F.3d 1282 (Fed. Cir. 2018) ........................................................................................2

## SUMMARY OF THE ARGUMENT

Samsung chose not to file its own IPR against the '449 patent.[2] Then, Samsung rejected Papst's pretrial offer to stay the '449 litigation pending completion of the other IPR appeals. Ultimately, the jury returned a verdict affirming the validity of the '449 patent. After all that, Samsung now claims that certain IPR final written decisions relating to the '746 and '144 patents (the "'746/'144 FWDs")[3] collaterally estop Papst's arguments in support of the jury's finding, even though those FWDs regard different patents, claims, prior art combinations, and standards of proof. This Court should deny Samsung's claim on the following separate grounds:

- The '746/'144 FWDs have no estoppel effect because the PTAB applies a lower burden of proof to claims of invalidity (preponderance) than applied in this case (clear and convincing);
- Collateral estoppel does not apply to issues developed through trial and decided by a jury;
- The Federal Circuit declined to find estoppel against the '399 patent based on arguments also asserted by Samsung here;
- The legal requirements for applying collateral estoppel are not met in this case.

## ARGUMENT

## I.     The PTAB's Lower Burden of Proof Makes Collateral Estoppel Inapplicable.

Samsung's attempt to rely on the '746/'144 FWDs decided under a preponderance of the evidence standard to preclude Papst from arguing in support of the jury's verdict that Samsung failed to prove invalidity by clear and convincing evidence is contrary to Supreme Court and Fifth Circuit precedent, as well as Federal Circuit decisions and traditional rules of issue preclusion.[4]

---

[2] Samsung and other defendants filed 41 IPRs against the '399, '746, '144, and '437 patents, resulting in 14 final written decisions. The Federal Circuit consolidated and coordinated the appeals of the decisions, setting eight appeals on the '746 and '144 patents and four appeals on the '399 and '437 patents for oral argument on April 4, 2019. In an effort to streamline the Federal Circuit's review and focus on the most valuable claims, Papst decided to conserve party and judicial resources by voluntarily dismissing its '746/'144 appeals on March 18, 2019.

[3] Samsung's defense of collateral estoppel purportedly relies on IPR2016-1211 (Doc. 357-3) ("'746 FWD-1211"), IPR2016-1212 (Doc. 357-4) ("'144 FWD-1212"), and IPR2016-1216 (Doc. 357-5) ("'144 FWD-1216") (Doc. 357 at 2.) Samsung claims that IPR2016-1212 and IPR2016-1216 "concerned different claims of the '144 patent, and thus contain many identical findings as well as some unique findings resulting from some differences among the claims" and states that it cites only to IPR2016-1212 where allegedly identical findings were made. (*Id.* at 2 n.2.) This vague and ambiguous assertion makes it impossible for Papst to respond to any claim of collateral estoppel purportedly arising from IPR2016-1216. Samsung, therefore, has waived any defense of collateral estoppel purportedly arising from IPR2016-1216.

[4] (Doc. 351 at 6-8 and Doc. 353 at 2-4 and discussion of applicable case law.)  Papst incorporates all cited portions of Docs. 351 and 353 into this Response as if fully stated herein. Like the Fifth Circuit, a number of other Circuit Courts

Although Samsung continues to rely on its discredited argument that the Federal Circuit's decision in *XY* makes the differences between the applicable burdens of proof in the PTAB and in this court irrelevant, its brief presents nothing new. Even if *XY* applies (it does not), it did *not* address the application of collateral estoppel in the face of differing burdens of proof because, unlike here, the claims invalidated by the PTAB were identical to the claims asserted in the district court such that cancellation of those claims extinguished the patentee's cause of action entirely.[5]  *XY* did not (and could not) overturn Supreme Court or earlier Federal Circuit decisions.[6] Collateral estoppel is inapplicable.[7]

## II.   The '746/'144 PTAB Decisions Do Not Collaterally Estop Papst's Arguments.

Under Fifth Circuit law,[8] collateral estoppel does not apply unless (1) the issue in the current litigation is identical to the one in the prior action; (2) the issue was fully and vigorously litigated in the prior action; and (3) the determination of the issue in the prior action was necessary to the judgment in that prior action; and (4) there are no special circumstances that would render estoppel inappropriate or unfair.[9] Collateral estoppel does not apply unless the issues in the two

---

likewise refuse to find an issue precluded when different burdens of proof apply. *E.g.*, *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006); *Cobb v. Pozzi*, 363 F.3d 89, 114 (2d Cir. 2004); *O'Shea v. Amoco Oil*, 886 F.2d 584, 594 (3d Cir. 1989).

[5] (Doc. 353 at 2-4.)

[6] *Intellectual Ventures I v. Lenovo Grp.*, 2019 WL 1474460 (D. Mass. Apr. 4, 2019) and *Fellowes Inc. v. ACCO Brands Corp.*, 2019 WL 1762910, at *6 (N.D. Ill. Apr. 22, 2019) remain unavailing for the reasons set forth in Doc. 353 at n.18. *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971), is also inapposite because it involved (1) the same applicable burden of proof; and (2) the same patents. *Id.* at 314-17. Further, the Court noted that a plea of estoppel is not automatic, restricting its holding to cases in which the plaintiff chose the forum and had a fair opportunity to pursue its claim "procedurally, substantively, and evidentially . . . ." *Id.* at 333.

[7] Collateral estoppel is also precluded here because "the purposes underlying the doctrine of collateral estoppel militate strongly against allowing this defense to be asserted after trial." *Mozingo v. Correct Mfg.*, 752 F.2d 168, 172 (5th Cir. 1985). (*See also* Docs. 351 at 8-9, 353 at 1-2, 3 n.7.) Papst has not found any decision citing to or otherwise following the district court's *U.S. Ethernet* decision cited by Samsung, and the Federal Circuit did not address whether collateral estoppel applied after trial under Federal or Fifth Circuit law because it found collateral estoppel applied based on the issue-preclusive effect of its own concurrent appellate ruling. *See U.S. Ethernet Innovations, LLC v. Texas Instruments, Inc.*, 645 F. App'x 1026, 1028 (Fed. Cir. 2016); *see also XY*, 890 F.3d at 1294. Application of collateral estoppel is also barred because it would result in manifest injustice, for all the reasons set forth in Docs. 351 at 5-6, 9 and 359 at 4-5. *See Moch v. East Baton Rouge Parish Sch. Bd.*, 548 F.2d 594, 598 (5th Cir. 1977).

[8] *Soverain Software v. Victoria's Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1314 (Fed. Cir. 2015) (regional circuit law applies). (*See also* Doc. 353 at 3 n.7.)

[9] *State Farm Mut. Auto. Ins. Co. v. Logisticare Soln's*, 751 F.3d 684, 689 (5th Cir. 2014); *Midwest Mechanical Contractors v. Commonwealth Const.*, 801 F.2d 748, 751 (5th Cir. 1986); *see also Soverain*, 778 F.3d at 1314.

proceedings are "identical in all respects."[10]  Collateral estoppel cannot be applied solely because

patents are related.[11] Factual issues "are not 'identical' or 'the same,' . . . if the legal standards

governing their resolution are 'significantly different.'"[12] The "actually litigated" requirement is

satisfied only when the issue was "raised, contested by the parties, submitted for determination by

the court, and determined."[13] A determination is "necessary to the judgment" in a prior proceeding

only when "the final outcome hinges on it."[14]

### A.  The Federal Circuit Previously Rejected Similar Arguments by Samsung.

Samsung has asserted that "[c]laim 1 of the '399 patent is remarkably similar in scope" to

claims 1 and 17 of the '449 patent.[15] At the Federal Circuit, Samsung asserted the '746/'144 FWDs

---

[10] *C.I.R. v. Sunnen*, 333 U.S. 591, 599-600 (1948); *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995); *Finjan v. Sophos*, 244 F. Supp.3d 1016, 1032 (N.D. Cal. 2017) (different prior art creates different issues); *Ticketnetwork v. Ceats*, IPR2018-245, Paper 50 (Final Written Decision) at 9 (May 31, 2019).

[11] *Comair Rotron v. Nippon Densan*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) ("[I]t can not be presumed that related patents rise and fall together"); *SunTiger, Inc. v. Sci. Res. Funding Grp*, 189 F.3d 1327, 1332-33 (Fed. Cir. 1999).

[12] *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005); *see also Applied Mat'ls v. Gemini Research*, 835 F.2d 279, 281 (Fed. Cir. 1987). (*See also* Docs. 351 at 6-8 and 353 at 2-4.)

[13] *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005); *see also Purdue Pharma v. Iancu*, No. 2018-1710, 2019 WL 1752642, at *3-4 (Fed. Cir. Apr. 17, 2019) (no estoppel regarding prior art priority date because priority date was not challenged in prior proceeding); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1382-83 (Fed. Cir. 2018) (no estoppel because the accused infringer did not to respond to the patent holder's arguments in prior proceeding); Restatement (Second) of Judgments (1982) § 27 cmt. e ("[a]n issue is not actually litigated . . . if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny)").

[14] *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4421, p. 543 (2d ed. 2002)); *see also Hill-Rom Co. v. Kinetic Concepts*, 209 F.3d 1337, 1344 (Fed. Cir. 2000); *A.B. Dick v. Burroughs*, 713 F.2d 700, 704 (Fed. Cir. 1983) (quoting *Studiengesellschaft Kohle v. Eastman Kodak*, 616 F.2d 1315, 1332-33 (5th Cir. 1980)).
     Collateral estoppel does not apply when the differences between the claims "materially alter the question of validity." *Ohio Willow Wood*, 735 F.3d at 1342 (no estoppel if patent at issue is different in a "patentably significant" way).  "The question before the Court is not whether [an] additional limitation renders the claim non-obvious, but whether the addition of [a] new limitation would alter an obviousness *analysis*." *Nichia Corp. v. VIZIO, Inc.*, No. 16-cv-00545-SJO (MRW), 2018 WL 1942413, at *8 (C.D. Cal. Mar. 29, 2018).  Defendant bears the burden to establish that the claims of the two patents are substantially similar. *Id.* at *6.  The Court must assess whether the differences between the claims "materially alter the question of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342.  Samsung does not attempt to compare the disputed claims of the '746 and '144 patents to claims 1 and 17 of the '449 patent as required by *Ohio Willow Wood*. Even a cursory comparison shows key limitations of the '449 patent are missing from the '746 and '144 patents, including those requiring the interface device to (1a) present a file system to the host device that emulates the file system; (1b) of the storage device customary in the host device; (1c) even though the emulated file system does not actually exist on the interface device; and (2a) to send a signal in response to an inquiry from the host computer; (2b) identifying the interface device as a storage device, (2c) regardless of the type of device attached. See *infra* at 6-9 (Not Necessary to Judgment). These differences materially alter the questions of validity and show that the '449 is different in a patentably significant way. (Docs. 339 at 31-33, 34-36 & 345 at 10.)

[15] No. 6:15-cv-1095, Doc. 709 at 1-2. Papst disagrees and believes that significant differences Exist between the '399 and '449 patents that materially alter the question of validity. Even Samsung's redline analysis, although not

3

as collateral estoppel against the '399 patent, claiming as it does here that the FWDs precluded Papst from (1) arguing the Kawaguchi combination does not identify its interface device as a hard disk in response to an inquiry from the host computer; and (2) relying on facts showing Kawaguchi and Schmidt teach away from their combination that purportedly conflict with findings regarding Kawaguchi and SCSI Standard.[16] The Federal Circuit implicitly rejected Samsung's argument and declined to apply estoppel, instead addressing the appeal on its merits under different prior art.[17]

### B. Collateral Estoppel Does Not Bar Papst's Arguments that the Kawaguchi Combination Fails to Disclose Two Limitations of the '449 Patent.

1. Samsung Failed to Show that the Kawaguchi Device Presents an Emulated File System that "Does Not Actually Exist on the Interface Device."

The limitation "simulating a virtual file system to the host" in the '449 patent does not exist in the '144 and '746 patents. The Court construed this term as "presenting to the host device a file system that emulates the file system of the storage device customary in the host device, *even though the emulated file system does not actually exist on the interface device*."[18] Nothing in the '746/'144 FWDs precludes Papst's argument that Samsung failed to show that the Kawaguchi Combination presents an emulated file system that "does not actually exist on the interface device."

***Not Identical Issues.***—*First*, before the jury, Samsung relied on *Murata* for the emulated file system[19] and Samsung does not contend (nor could it) that the PTAB found that Murata teaches the emulated file system. Instead, the FWDs addressed Kawaguchi. *Second*, neither of the cited passages find that an emulated *file system does not* exist on Kawaguchi's interface device.[20] The cited passages show exactly the opposite. Both decisions state that Kawaguchi's flash RAM

---

exhaustive, shows that the '449 patent's "simulating a virtual file system," and "signals to the host device that it is a storage device customary in a host device" limitations are not present in the '399 patent.

[16] Suppl. Br. of Appellees Concerning Collateral Estoppel at xiv, 7, 19-20, Nos. 18-1987, -1988, -1989 (Fed. Cir. Apr. 2, 2019).

[17] *Papst Licensing v. Apple*, 767 F. App'x 1011 (Fed. Cir. 2019).

[18] (No. 6:15-cv-1095, Doc. 275 at 50.)

[19] 11/02/18 A.M. Tr. (Robins) at 129:7-12, 15-23.

[20] (*Id*. at 7.)

memory is on the interface device.[21] The remainder of the quotation from '746 FWD-1211, which Samsung omitted, states a "RAM drive is *'always implemented with a file system installed on it and stores files as files on the RAM drive*.'"[22] Other examples show the same:

- **'746 FWD-1211**: "Kawaguchi . . . suggests  . . . that the disclosed RAM *would include a file system.* * * * Kawaguchi suggests that the disclosed RAM . . .  *would include a file system*, storing data as files."[23]

- **'144 FWD-1212**: "Kawaguchi suggests a RAM drive that has a *file system* . . . . Kawaguchi suggests that the disclosed RAM . . . *would have a file system* and would store data as files.[24]

Although Samsung claims that the passages show that "a *spinning hard disk drive* . . . does not actually exist on the Kawaguchi device,"[25] the construed claim requires the nonexistence of a "file system," not a spinning hard disk drive.[26] *Third*, Samsung's quotations from both '144 FWD-1212 and '746 FWD-1211 cite to prior art *other than Kawaguchi* that is not asserted against the '449 patent.[27] These passages address a different issue,[28] and Samsung's reliance on them violates its Final Election of Prior Art (which omits the other prior art) and the Court's Model Order.

   ***Not Actually Litigated.***—The cited passages have no estoppel effect because whether Murata or the Kawaguchi SCSI Device Converter ("SDC") presents an emulated file system that does not actually exist on the interface device was addressed by the parties or the PTAB. Indeed, in both IPRs, Samsung asserted (and the PTAB found) that the SDC stores data as a file *in a file system on the RAM drive within the SDC.*[29] Neither the parties nor the PTAB addressed whether

---

[21] Doc. 357-3 at 19 ("Kawaguchi's SCSI device converter [the interface device] includes a . . . RAM, where . . . the RAM discloses data storage memory."); Doc. 357-4 at 23 & Fig. 1 ("SCSI device converter 3 [the interface device] also implements data writing unit 11, data reading unit 12 . . . by using a . . . RAM.").
[22] Doc. 357-3 at 24.
[23] Doc. 357-3 at 23, 25.
[24] Doc. 357-4 at 52, 56.
[25] Doc. 357 at 6-7.
[26] (No. 6:15-cv-1095, Doc. 275 at 50.)
[27] Doc. 357-4 at 52 (citing MS-DOS Encyclopedia); '746 FWD-1211 at 24 (same).
[28] *Sophos*, 244 F. Supp.3d at 1032 (different prior art creates different issues); *TicketNetwork*, IPR2018-245, Paper 50 at 9 ("Different art makes different grounds, which makes for different issues. Collateral estoppel is not appropriate where the issues are different.").
[29] Doc. 357-4, Pet. at 48-51, 58-59; Doc. 357-3, Pet. at 20-21, 39-40.

Kawaguchi presents *an emulated file system* that *does not exist* on the Kawaguchi SCD. [30]

**Not Necessary to the Judgment.—** Even if the cited passages addressed the issue of whether Kawaguchi presents an emulated file system that "does not actually exist on the interface device" (they do not), the passages have no estoppel effect because such a determination is not necessary to the FWDs. Unlike the '449 patent, neither the '746 nor the '144 patent includes the simulating a virtual file system limitation. The cited passages relate to the PTAB's analysis of the "file system" limitations of claim 1 of the '746 patent[31] and claim 84 of the'144 patent,[32] respectively, neither of which requires (1) presenting a file system to the host device that emulates the file system; (2) of the storage device customary in the host device; (3) even though the emulated file system does not actually exist on the interface device.  Thus, even if the cited passages determined an identical issue (they did not), they have no estoppel effect because such determination is not necessary to the FWDs.  To the contrary, because the file system limitations of both the '746 and '144 patents require the existence of a file system, the cited passages show that the emulated file system actually *does exist* on the Kawaguchi interface device. Thus, even if the cited passages could be misconstrued to suggest the PTAB decided an identical issue (it did not), they have no estoppel effect because such determination is not necessary to the FWDs.

> 2. <u>Samsung Failed to Show That the Kawaguchi Device Sends a Signal Identifying Itself as a Customary Storage Device.</u>

The FWDs do not preclude Papst's argument that that the Kawaguchi interface device does not identify as a storage device in response to an inquiry from the host computer.

**Not Identical Issues.—** *First*, neither of the cited passages address the issue presented by

---

[30] '746 FWD-1211 at 23, 25; '144 FWD-1212 at 52-53.

[31] Doc. 357-3 at 19; Ex. A, '746 patent, cl. 1 at 11:65 – 12:4 ("the processed and digitized analog data *is stored in a file system of the data storage memory* as at least one file of digitized analog data").

[32] Doc. 357-4 at 48, 51-52; Ex. B, '144 patent, cl. 84 at 16:41-58 ("the ADGPD file system information comprises at least an indication of the type of *a file system that is used to store the at least one file of digitized analog data in the data storage memory*").

Papst's argument. Samsung omits "Petitioner contends that" from its quotation of '144 FWD-1212 at 43-44[33]; the full quotation is merely the PTAB's *recitation of petitioner's arguments*, not the PTAB's findings. The PTAB found only that the prior art teaches the "automatic recognition and file transfer" limitations of claims 1, 84, and 86 of the '144 patent, which do not require the interface device to misidentify itself as a "hard disk" in response to an inquiry.[34] *Second,* the passage at '144 FWD-1212 at 34[35] cited by Samsung states only that a "data reading unit," not the interface device itself, is identified as a hard disk. Further, nothing in the passage states the identification occurs in response to an inquiry from the host device. *Third*, the cited passage at '746 FWD-1211 at 31[36] does not find that the (1) Kawaguchi interface device, (2) identifies as a hard disk, (3) in response to an inquiry from the host computer.

> ***Not Actually Litigated.*—** Because Papst did not contest petitioners' allegations that Kawaguchi (1) identifies itself; (2) as a hard disk; (3) in response to an inquiry from host computer[37] in the instituted '746 and '144 IPRs, instead focusing on the file system limitations,[38] the cited passages have no estoppel effect.[39]

> ***Not Necessary to the Judgment.*—** Even if the cited passages could be construed to suggest that the PTAB found that Kawaguchi interface device identifies itself as a storage device in response to an inquiry from the host computer (they do not), the passages have no estoppel effect because such a determination is not necessary to the '746/'144 FWDs. Unlike the '449 patent, the

---

[33] (Doc. 357 at 5.)
[34] (Docs. 351 at 6 & 353 at 1.) *See also* Ex. B, '144 patent at 12:4-36, 16:25-40, 16:59-17:4, 17:39-18:46.
[35] This passage addresses the "data generation process" limitation of claims 1, 64, 65, 84, and 86 of the '144 patent. '144 FWD-1212 at 31-32.
[36] This passage addresses the "automatic recognition" limitation of claim 1 of the '746 patent. '746 FWD-1211 at 30 & n.13, 31.
[37] '746 FWD-1211 at 30 & n.13, 31; '144 FWD-1212 at 34, 42-44. *See also* Ex. A,'746 patent at 12:5-14; Ex. B, '144 patent at 12:4-23 & 16:25-40.
[38] Ex. A, '746 IPR2016-1211, P.O. Resp. at 1-49; Ex. B, '144 IPR2016-1212, Pat. Owner Resp. at 1- 38. *See also* '746 FWD-1211 at 30-31; '144 FWD-1212 at 46-47.
[39] *See Voter*, 887 F.3d at 1382-83 (Fed. Cir. 2018); *see also* Restatement (Second) of Judgments (1982) § 27 cmt. e.

'144 patent's "automatic recognition" and "data generation" limitations addressed in the cited passages do not require an interface device (1) to send a signal in response to an inquiry from the host computer; (2) identifying the interface device as a storage device, (3) regardless of the type of device attached.[40] Likewise, the '746 patent's "automatic recognition" limitations addressed in cited passages do not require an interface device (1) to send a signal in response to an inquiry from the host computer; (2) identifying the interface device as a storage device.[41] As a result, even if the cited passages determined an identical issue in this case (they did not), they have no estoppel effect.

### C. Collateral Estoppel Does Not Bar Papst's Arguments That the Asserted References Show No Motivation to Combine Exists.

#### 1. Kawaguchi and Schmidt Teach Away from Their Combination.

Papst's argument that combination of Kawaguchi and Schmidt would violate principles of operation of the references and render them inoperable is not estopped by the '144 FWD-1212.[42]

*Not Identical Issues.*—Papst argues that the references teach away from the combination alleged "*to achieve the claimed invention*" recited in the '449 patent.[43] The cited passage of the '144 FWD-1212 does not address this issue. *First*, the cited passage instead addresses the "automatic recognition and file transfer" limitations of the '144 patent, not the combination alleged to achieve the '449 invention. Unlike the '449 patent, these limitations require only the sending of "at least one parameter which provides identification information"[44] and do *not* require the interface device to (1) misidentify itself; (2) as a storage device; (3) in response to an inquiry from the host device. These additional '449 limitations are the very reasons Kawaguchi and Schmidt cannot be combined to achieve the '449 invention.[45] *Second*, the passage relates to the PTAB's

---

[40] Ex. B, '144 patent at 11:66-12-3, 12:4-36, 16:25-40, 16:59-17:4, 17:39-18:46.
[41] Ex. A,'746 patent at 12:5-14
[42] (Doc. 357 at 8-9.)
[43] *See Cumberland Pharm.*, 846 F.3d at 1221-22; *accord ActiveVideo Networks*, 694 F.3d at 1327.
[44] Ex. B, '144 patent at 11:57.
[45] (Doc. 339 at 31-33 (Schmidt does not allow a peripheral device (1) to misidentify itself in response to host inquiry; or (2) to identify as a hard drive without the ability to both read from and write to a host computer)).)

application of Kawaguchi *alone*, not any combination.[46] *Third*, the passage does not address facts showing that Kawaguchi's principle of operation—parallel processing capability—would be destroyed if the Kawaguchi *interface device* (as opposed to its individual reading or writing units) was treated as a single hard drive by the host computer.[47] Indeed, it states the opposite: each of Kawaguchi's separate units, not the interface device itself, is identified as a logical unit.[48] *Fourth*, the cited passage refers to combining Kawaguchi and SCSI Specification, not Kawaguchi and Schmidt.[49] Schmidt provides detail that "fills th[e] void" left by the actual ANSI documentation of SCSI Specification "with a clear, concise description of [the SCSI interface]."[50]

*Not Actually Litigated.*—Samsung claims that Papst's argument that Kawaguchi and Schmidt teach away from their combination is estopped because the PTAB found that Kawaguchi and the SCSI Specification "are perfectly consistent."[51] That statement (which is dubious) has no estoppel effect because the issue was not actually litigated in '144 FWD-1212. Papst did not challenge the petitioners' assertion that Kawaguchi and SCSI Specification could be asserted as a prior art combination against the '144 patent.[52]

*Not Necessary to the Judgment.*—The cited passage is also not necessary to the '144 FWD-1212. The passage relates to the PTAB's application of Kawaguchi *alone*; even if it suggested Kawaguchi and the SCSI Specification are consistent, such finding is not necessary to the judgment.[53] Further, Papst's arguments rely on '449 limitations not present in the disputed '144

---

[46] '144 FWD-1212 at 42 & 44 ("*Kawaguchi* teaches or suggests the aforementioned limitations.").

[47] (Doc. 339 at 32.)

[48] '144 FWD-1212  at 44 ("attribute information of logical units") & 38 ("provid[es] reading and writing units as *distinct logical units*").

[49] See *supra* note 28 (different prior art creates different issues).

[50] *See* DX36-0004; *see also* (Doc. 339 at 31-33, 36) (noting requirements that (1) prohibit a peripheral device from misidentifying itself in response to host inquiry; (2) prohibit a peripheral device from identifying as a hard drive without the ability to both read from and write to a host computer; and (3) SCSI commands, such as "Inquiry" from a host computer, "are always directed to a LUN . . . not to a target itself").

[51] (Doc. 357 at 8.)

[52] Ex. B, '144 IPR2016-1212, Pat. Owner Resp. at 1- 38.

[53] *See supra* note 46.

claims.[54] Thus, whether Kawaguchi and the SCSI Specification are "perfectly consistent" for the purpose of achieving the '449 limitations (they are not), is not necessary to the judgment.

> 2. Kawaguchi and Schmidt Show Their Combination Would Violate Principles of the Art and Render It Inoperable.

Papst argues that combination of Kawaguchi and Schmidt violates principles of the art and renders it inoperable because it would require the Kawaguchi device to falsely tell the host computer that it could access a device at a specific logical unit number (LUN) that can both read data from and write data to a host computer, when, in fact, each device at each LUN is capable of _only_ reading data from _or_ writing data to a host computer _(but not both)_.[55] The '144 FWD-1212[56] does not estop Papst's argument because it addresses a different issue. The passage cited found only that Kawaguchi's data reading unit is capable of writing data to the host computer and reading data _"from an input device (5) such as a CD-ROM."_[57] It did _not_ address whether the data reading unit is capable of _both_ writing data to a host computer _and_ reading data _from a host computer_.

> 3. Kawaguchi and Murata Show Their Combination Violate Principles of the Art and Render It Inoperable.

The '746/'144 FWDs do not estop Papst's argument that Kawaguchi and Murata teach away from their combination. The cited passages relate to Kawaguchi _alone_; they do not address Murata or a combination. As such, the passages address a different issue from the issue advanced by Papst's argument, and any suggestion Kawaguchi and Murata teach away from their combination is not necessary to the judgment.[58]

## CONCLUSION

For the foregoing reasons, this Court should deny Samsung's Motion for JMOL.[59]

---

[54] (Doc. 339 at 31-33.)
[55] (Doc. 339 at 32-33.)
[56] (Doc. 357 at 9.)
[57] '144 FWD-1212 at 37.
[58] '746 FWD-1211 at 22 (Kawaguchi suggests the limitation at issue); _see supra_ note 46.
[59] In the unlikely event this Court agrees with Samsung's collateral estoppel arguments, Samsung's Motion for JMOL must still be denied because they jury's verdict should be confirmed based on other grounds.

Dated:  July 1, 2019.                    Respectfully submitted,

By:      /s/ Christopher V. Goodpastor
         Christopher V. Goodpastor
         State Bar No. 00791991
         Andrew G. DiNovo
         State Bar No. 00790594
         Adam G. Price
         State Bar No. 24027750
         DINOVO PRICE LLP
         7000 N. MoPac Expressway, Suite 350
         Austin, Texas 78731
         Telephone:  (512) 539-2626
         Facsimile:   (512) 539-2627
         Email: cgoodpastor@dinovoprice.com
                 adinovo@dinovoprice.com
                 aprice@dinovoprice.com


         T. John Ward, Jr.
         State Bar No. 00794818
         Claire Abernathy Henry
         State Bar No. 24053063
         Wesley Hill
         State Bar No. 24032294
         WARD, SMITH & HILL, PLLC
         P.O. Box 1231
         Longview, Texas 75606-1231
         Telephone:  (903) 757-6400
         Facsimile:   (903) 757-2323
         Email:  jw@wsfirm.com
                 claire@wsfirm.com
                 wh@wsfirm.com

         **ATTORNEYS FOR PLAINTIFF**
         **PAPST LICENSING GMBH & CO. KG**

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Christopher V. Goodpastor*
Christopher V. Goodpastor